WILLIAMS, Judge.
Defendants appeal the judgment in favor of plaintiff in this personal injury suit. Ram Rod Trucking and Storage, Inc. appeals that portion of the judgment finding the company vicariously liable for the assault allegedly committed by its employee, Richard E. Hartón. Both Ram Rod and Hartón appeal the judgment in all other respects, as discussed below.
FACTS
On August 14, 1984, R. Ray Orrill, Jr. was injured when the vehicle he was driving was struck in the rear by a truck owned by Ram Rod Trucking & Storage, Inc. and operated by its employee, Richard E. Hartón. The accident occurred on Interstate 10 in the area of Morrison Road in New Orleans East. Orrill and his wife filed suit against Hartón and Ram Rod for injuries allegedly sustained as a result of the accident and surrounding events.
At trial, Orrill testified that, after colliding, the drivers parked their vehicles on the side of the Interstate. Hartón then went to the cab of his truck, withdrew a nickel-plated handgun and threatened Orrill. Hartón denied this allegation throughout his testimony and further testified that, in fact, Orrill threatened him with a brick and appeared to be intoxicated. Police officers found a nickel-plated handgun in the cab of Harton’s truck when they arrived on the scene of the accident.
The trial court rejected Harton’s testimony as lacking credibility and found that the accident was a result of Harton’s inattention, carelessness and failure to properly observe the traffic in front of him and to properly keep his vehicle under control at all times. The court further found that there was no negligence attributable to plaintiff. The court found Ram Rod Trucking and Richard E. Hartón liable jointly, severally and in solido in the total amount of $47,417.84, with judicial interest from the date of judicial demand until paid, and including all costs.[1]
Hampden R. White represented Ram Rod Trucking Company and Richard E. Hartón for all damages arising out of the motor vehicle accident.[2] The errors assigned on behalf of both Ram Rod and Hartón are addressed first, and then those assigned on behalf of Ram Rod on the issue of employer liability for the alleged assault and damages arising therefrom.
Assignments of Error by Ram Rod Trucking, Inc. and Hartón
Ram Rod and Hartón complain that the trial court erred in the following respects: in admitting into evidence the transcript of the criminal trial of Hartón for the alleged assault; in concluding that the plaintiff had sustained his burden of proof; in concluding that all medical treatment of Orrill presented at trial was a result of the automobile accident of August 14, 1984, and; in awarding an excessive amount of damages for pain and suffering to Orrill.
*386 Introduction of Transcript
Defendants argue that introduction of the transcript of Harton’s criminal trial (in connection with the alleged assault) should not have been allowed primarily because it was not certified. Furthermore, the transcript should not have been introduced because a district court cannot take judicial notice of proceedings in a case from another jurisdiction. Cumberland Tel. & Tel. Co. v. St. Louis I.M. & S. Ry. Co., 41 So. 492, 117 La. 199 (1906).
“Judicial notice” is “the act by which a court, in conducting a trial or framing its decision, will, of its own motion, and without the production of evidence, recognize the existence and truth of certain facts, having a bearing on the controversy at bar, which, from their nature, are not properly the subject of testimony, or which are universally regarded as established by common notoriety ...” BLACK’S LAW DICTIONARY 761 (5th ed. 1979). The court in this case did not of its own motion recognize the existence of certain facts. Rather, both the plaintiff and the defendant attempted to introduce the record of the prior criminal proceeding.
Defendants also complain that, by allowing the transcript to be introduced, the trial judge allowed introduction of testimony of two witnesses, a police officer and a tow truck driver, who were not present and therefore not subject to cross-examination. Furthermore, the testimony of these two witnesses is inadmissable hearsay offered for the truth of the matter asserted.
The trial judge allowed the transcript to be admitted into evidence under :a. C.E. art. 804B(1), which provides:
B. Hearsay exception. The following are not excluded by the hearsy rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception.
Comment (a) to Exception B(l) states that this subparagraph clarifies and broadens Louisiana’s former testimony exception to the hearsay rule.
The trial judge noted that the witness could not be found and plaintiff testified at trial that neither he nor defendants were able to locate the tow-truck driver who had appeared at the scene of the accident. The defendant Hartón had the opportunity to cross-examine the witness at his criminal trial, and the defendant employer's interest and motive are similar to those of Harton’s so that the employer’s interests were protected by Harton’s ability to cross-examine.
This court finds that the trial court did not commit manifest error in admitting the prior testimony. Furthermore, if the admission of the record had constituted error, we find that any such error would be harmless in light of the remaining evidence.
Plaintiff’s Burden of Proof
Defendants claim that, absent the transcript of the criminal trial, the only evidence pertaining to the facts surrounding the accident is the testimony of Mr. Orrill and Mr. Hartón. The testimony of these two witnesses was flatly contradictory and, therefore, parties being equally credible, statements of the party bearing the burden of proof should be held not proven. Howard v. Coyle, 111 So. 697, 163 La. 257 (1927). Therefore, defendants urge, the plaintiff failed to carry his burden of proof.
Defendants fail to note that the court in fact completely rejected the testimony of Mr. Hartón for lack of credibility. Mr. Harton’s testimony reveals many conflicting statements and there is no evidence indicating that the trial court erred in rejecting Harton's testimony as incredible. In light of the above, we find no reason to reverse the trial court’s finding that the accident was caused by the sole fault of Mr. Hartón and, therefore, any error in the *387 introduction of the trial transcript is harmless.
Medical Damages
Defendants contend that the record does not support the conclusion that all of the medical treatment received by Mr. Or-rill was a result of the accident in question.
Defendants’ primary complaint is with the testimony of Dr. Maria Palmer, who found that a nerve injury at the L3-L4 level was the cause of the pain in Mr. Orrill’s legs. Although Dr. Palmer examined plaintiff only once on September 21, 1987, over three years after the accident in question, she did not hesitate to attribute the cause of the injury to the automobile accident. Defendants also point out that at the time she rendered her diagnosis, Dr. Palmer was not aware that plaintiff had been injured in a ski accident less than a year prior to the automobile accident.
Plaintiffs customary treating physician, Dr. Seltzer, stated that. plaintiffs complaints of pain after the 1983 ski accident were somewhat different from the complaints after the accident in question. However, defendants contend that it is not uncommon for pains to “travel” from one point to another. Defendants further claim, without citing any authority, that courts routinely relate travelling pains to a previous trauma in assessing awards for personal injury. Defendants finally argue that the minimal award for medical fees shows that the plaintiffs injuries are not of the magnitude that the enormous award of damages for pain and suffering would indicate and therefore indicate that the award is excessive.
We do not find defendants’ argument persuasive. Defendants’ statement that plaintiff’s pain could be “travelling” pain caused by a prior ski accident is pure speculation. Furthermore, there is by no means necessarily a direct correlation between the amount of medical fees and the degree of injury, particularly where a lower back injury is involved and conservative treatment is followed. The jury observed the expert witnesses’ medical testimony and concluded that Orrill’s injuries and pain were caused by the accident in question and evaluated the testimony to arrive at the damage award. Defendants’ speculation does not rise to the level of manifest error required for reversal of a trial court judgment.
Excessiveness of Award
Defendants cite several cases in support of their argument that the general damage award of $45,000.00 is excessive.
In Plaisance v. Lloyd, 391 So.2d 566 (La.App. 4th Cir.1980), writ refused, 396 So.2d 931 (La.1981), this court affirmed a general damage award of $73,000.00 for a similar injury. Plaintiff’s treating physician in that case testified that plaintiff was suffering from a degenerative interverte-bral disc in the back involving considerable nerve root irritation. He further stated that the accident in question could not have caused the degenerative disc, but it did aggravate her condition. The doctor also stated that he expected the plaintiff’s symptoms to continue to come and go for an indefinite period, but thought it unlikely that surgery would be required. He classified plaintiff’s pain as mild to moderate.
The trial judge found that the plaintiff sustained nerve root injury as a result of the accident and awarded him $40,000.00 in general damages for that injury. Dr. Seltzer concluded that plaintiff suffered lumbar radiculopathy (nerve root damage) at L-3 and L-4. Though the doctor stated that not enough information had been gathered or could yet be gathered to determine how long the injury would last, he stated that the longer a condition remains, the greater the likelihood that it is permanent.
Dr. Palmer, a neurologist, concurred in Dr. Seltzer’s diagnosis but could not state whether the damage was permanent. The trial judge noted that the defendants’ expert witnesses testified that they could not find any objective evidence of a nerve root problem. Though the trial judge did not point this out in his reasons for judgment, we note that Dr. Palmer testified that Dr. Oser’s examination of plaintiff was performed three or four months prior to her own, so that their findings were not necessarily inconsistent.
*388 Plaintiff related the history of his problems to Dr. Palmer as including weakness in both knees, difficulty walking up and down stairs, and loss of balance at times resulting in a fall. The plaintiff testified that he engaged in a weight-loss program and joined a health club to perform the exercises recommended by Dr. Palmer to help alleviate some of his back problems. He continued to suffer and was taking various medications at different times, including Naprosyn and Nalfon. Mr. Orrill further testified, four years after the accident in question, that he still has the back pain every day to one extent or another.
We find that, though the award might be generous, we cannot articulate any abuse of the trial court’s discretion as required by Reck v. Stevens, 373 So.2d 498 (La.1979).

Assignment of Error by Ram Rod Trucking, Inc.

Ram Rod Trucking, Inc. complains that the trial court erred in finding it liable for the assault that Hartón allegedly committed against Orrill and, alternatively, that the general damage award of $5,000.00 for the alleged assault is excessive.
Employer Liability
Ram Rod argues that Harton’s tor-tious conduct was not closely connected in time, place, and causation to his employment duties so as to be regarded a risk of harm fairly attributable to the employer’s business. Ram Rod contends that the conduct was motivated by purely personal considerations entirely extraneous to the employer’s interests so that it cannot be held vicariously liable. LeBrane v. Lewis, 292 So.2d 216 (La.1974). We agree.
In LeBrane, a hotel manager fired an employee for his refusal to leave for the day after he had arrived late for work and to get a haircut in order to work in the food preparation area. A fight ensued, and the hotel manager stabbed the employee as the employee attempted to flee. The Louisiana Supreme Court held that the supervisor’s conduct was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer’s business.
We find the instant case distinguishable. In LeBrane, the tortious conduct occurred on the employment premises in immediate connection with the supervisor’s exercise of his employment duties (i.e., firing employees under certain circumstances). In the instant case, the tortious conduct did not occur on the employment premises, and it did not involve a co-employee. Though Hartón was engaged in performance of his duties when the accident occurred, his actions could, in no manner, be considered as benefitting his employer’s business. Further, the assault on Orrill cannot be regarded as a “risk of harm fairly attributable to the employer’s business.” Harton’s assault on Orrill was clearly motivated by Harton’s own personal considerations.
For the reasons discussed above, we reverse the trial court’s finding that Ram Rod Trucking, Inc. is liable for the assault committed by its employee, Richard E. Har-tón.
Because we find that the employer is not liable for Harton’s assault, it is not necessary to address Ram Rod’s assignment of error regarding the amount of the award for damages arising out of the assault. Mr. Hartón did not appeal the damage award for the assault.
AFFIRMED IN PART; REVERSED IN PART.

. The award included the following amounts: $40,000.00 in general damages as a result of Orrill’s back injury; $5,000.00 for damages arising out of the assault with a gun; $1,540.84 for property damage; and medical specials in the amount of $32.00 for Dr. Palmer, $25.00 for Dr. Seltzer, and $310.00 for Dr. Green. The judgment was subsequently amended to correct a clerical error, increasing the amount of medical expenses due Dr. Palmer from $32.00 to $542.00.

. This defense was provided by Louisiana Guaranty Association pursuant to LSA-R.S. 22:1375 et seq. as a result of an automobile liability insurance policy issued to Ram Rod Trucking Company by Midland Insurance Company.