## SHIRLEY v. CALDWELL BROS. & HART et al.

### No. 1882.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1938.

Fred G. Benton, of Baton Rouge, for appellant.

Taylor, Porter & Brooks, of Baton Rouge, for appellees.

OTT, Judge.

Miss Helen Ann Shirley, the minor daughter of the plaintiff and a student at the Louisiana State University, was driving a V-8 Ford Coupe with two girl companions on the Highland Road on the University campus, in a northerly direction, just after the noon hour on May 12, 1937, when the Ford Coupe collided with the left front of a truck driven by an employee of defendant, Caldwell Brothers & Hart, contractors performing work in the construction of Leche Hall. The young lady suffered a fracture of the eighth rib on her left side and a nervous shock. The suit is by her father to recover for her damages in the sum of $2500, and to recover damages for himself as owner of the car which she was driving, the sum of $83.30. The New Amsterdam Casualty Company, the insurance carrier for the contractors, was joined in the suit.

Plaintiff alleges that his daughter was driving north on said Highland Road at a reasonable rate of speed, with the left side of her car at least one and one half to two feet east of the black line marking the center of the road when, without any warning, the driver of the truck who was coming in the opposite direction, undertook to swerve his truck to the left, or tried to make a left hand turn across the road into the path of the oncoming car driven by Miss Shirley, and at a time when she was so close that, as the truck swerved to the left, crossing the black line, the left front fender of the truck struck the Ford a glancing blow on its left side with such force as to drive it against the curb on the east side.

It is also alleged that Miss Shirley was driving 30 to 35 miles per hour on her side of the road; that the driver of the truck coming south slowed down as if he intended to stop and observe her right of way, but, when she was almost abreast of the truck, the driver cut to his left across the black line and struck the car which she was driving.

Defendants deny any negligence on the part of the truck driver. They allege that on the day of the accident, Bennie Beshears, an employee of the contractors, was driving one of their trucks south on the west side of the Highland road in a careful and prudent manner; that the driver saw the Shirley car approaching from the south at an excessive rate of

speed; that the driver expected to make a left turn in order to drive into a driveway north of Leche Hall; that the driver held out his left hand to indicate his intention of turning, and brought the truck to a complete stop, facing in a southeasterly direction on the west side of the road; that Miss Shirley continued to drive at an excessive speed and in an inattentive and reckless manner; that apparently she did not see the truck until she was about 30 feet from it; that the truck was then stopped in the road, and Miss Shirley applied her brakes and the Ford swerved to its left and struck the left front of the truck standing still.

Defendants allege in the alternative that if the driver of the truck was guilty of any negligence, which they deny, Miss Shirley was guilty of contributory negligence in operating her car at an excessive rate of speed and in an inattentive and reckless manner, and that her negligence is imputable to her father precluding him from recovering damage to the car and barring her recovery for the injuries received by her in the accident. And in the further alternative, defendants aver that Miss Shirley had the last clear chance to avoid the accident.

In a supplemental answer, the defendant contractors allege that their truck was damaged in the collision in the sum of $73.67, and that this damage was caused solely by the negligence of Miss Shirley who is a minor living with her father, the plaintiff, and they reconvene and ask judgment for this amount against plaintiff.

The trial judge gave exhaustive written reasons for judgment in which he analyzed the evidence and made a finding of facts. He reached the conclusion that the accident was caused by the negligence of Miss Shirley, and rejected her demands and the demands of her father, and, after granting a new trial, rendered judgment in favor of the contractors against the plaintiff for the amount claimed in the reconventional demand. Plaintiff has appealed.

The Highland road at the point of the accident is 24 feet wide and is paved from curb to curb. The black line is off center one foot, there being 13 feet from this line to the east curb and 11 feet to the west curb. There were no other cars on the road near enough to affect the situation. There was nothing to obstruct the view of either the driver of the truck or the driver of the Ford. There was no intersecting street at the point of the accident, but the truck driver was preparing to turn into a drive way to his left in order to deliver some tools at the site where the construction work was going on.

The version of the truck driver as to the occurrence is about as follows: he was coming south on his side of the road at a slow rate of speed, and as he approached the place where he was to turn into the driveway on his left, he held out his left hand and came to a stop, with his truck facing in a southeasterly direction at an angle of about 45 degrees, with the left wheel of the truck on the black line and the left part of the front bumper extending over the black line about 16 inches; that as he stopped in this position, he saw Miss Shirley coming toward him from the south 75 or 80 feet away and driving at a fast speed, not less than 40 miles per hour; that she applied her brakes when within about 15 feet of his truck, skidded and struck the left fender of the truck and then went on 35 or 40 feet further, where her car stopped with the rear against the east curb and the front pointing at an angle toward the University; that his truck was standing still when struck by the Ford car; that the skid marks made by the Ford were about 18 inches east of the black line. The truck driver testified that he had remained in this stopped position from the time he saw the Ford coming 75 or 80 feet away until the collision.

The account given by Miss Shirley is somewhat different than that set up in the petition. She says that she was driving from 35 to 40 miles per hour going north with the left wheels of her car one and one half to two feet east of the black line; that she did not see the truck until she was within 15 feet of it, at which time the truck was stopped (in plaintiff's petition it is alleged that the truck did not stop, but swerved to the left without stopping); that the truck stopped on its side of the road, and then started up after she got within fifteen feet of it and hit the side of her car as she tried to pass. She examined the skid marks of her car after the accident, and these marks showed that the left wheel of her car was about two feet from the black line, running parallel with this line

for about fifteen feet. She admits that there was plenty of room for her to have passed east of the truck, but she tried to stop when she saw the truck and did not pull to the right.

Miss Culpepper, another student at the University and who was riding next to Miss Shirley in the Ford Coupe, says that they were riding along, and when she looked up she saw this truck stopped in the middle of the road and turned a little to its left; that the truck was not then in the way of their car, and Miss Shirley was driving about 35 miles per hour on her side of the road; that she did not keep looking at the truck and did not see it start up, but the next thing she knew, the truck had hit their car. She says the truck was moving when it struck their car, however, it is rather difficult to understand just how she could tell that the truck was moving when it struck the Ford in view of the fact that she did not see the truck until she was within fifteen feet of it, and did not see it start up while the Ford was traveling this short distance.

There were several other witnesses who testified in the case, some of whom were near the scene of the accident and others who came up soon afterwards. We do not deem it necessary to review the testimony of all these witnesses as their testimony, for the most part, does not bear directly on the vital point in the case, that is whether or not the truck remained in a stationary position after it stopped to let the Shirley car pass before crossing the road.

There is no doubt in our minds that Miss Shirley was driving some two feet or more east of the black line. Nor is there any doubt in our minds from the evidence that the left front part of the truck was extending over the black line two feet or more. In fact, the truck could not have been extending over the black line any further than the left part of the Ford was from the black line, otherwise the Ford would have struck the truck almost head on. The evidence shows that the left front of the truck came in contact with the left fender and left side of the Ford. A photograph of the damaged Ford shows that the front part of the left fender was mashed inward and downward, over the front part of the left front wheel; that the running board was mashed in all the way back to the rear fender,

and there was a considerable dent in the door of the car and on the fender and running board under the driver's seat. In fact, the damage done to the left side of the Ford shows that it came in contact with some object from the front of the left fender back as far as the rear fender. This indicates a side-swipe more than it does a direct impact from the side.

In addition to the truck driver, two other witnesses for the defendant, Jesse Doty and J. B. West, who were within a few feet of the accident and claim to have seen the collision, state positively that the truck did not start up after it stopped to let the Ford pass. Another witness for the defendant also undertook to say that the truck did not start up before the collision, but in view of the fact that this witness (Forbes) did not actually see the collision, we do not think he intended to testify that the truck did not start up after it stopped. Even without the testimony of this witness, there were three witnesses for the defendants who testified that the truck was not in motion when the impact took place, as against the testimony of the two young ladies to the contrary, and one of the young ladies, Miss Culpepper, is not at all positive and certain in her testimony that the truck was then in motion. While we are impressed with the apparent desire of these young ladies to tell just how the accident happened, we cannot say that the trial judge was in error in his finding that the truck was not in motion when struck by the Ford. As the trial judge well says, it can hardly be presumed that this truck driver would stop his truck when the Shirley car was approaching seventy five or eighty feet away, and then, when the car got within fifteen feet of it, suddenly start up the truck right in the path of the oncoming car. Such conduct would not only be careless and negligent, but it would border on the wilful and the criminal.

The evidence shows that Miss Shirley was traveling around 40 miles per hour, and did not see the truck, according to her own testimony, until she was within fifteen feet of it. Had she been keeping a proper lookout and driving at a proper speed, she could have easily gone to the right of this truck standing with its front two feet or so over the black line.

■ It is true that a motorist making a left turn across the path of on-coming traffic between intersections is required to

use extraordinary precautions, as the motorist coming from the opposite direction on his side of the road is not required to anticipate a sudden left turn into a driveway, although the approaching motorist may also be held negligent in not observing a car making a left turn into a private driveway. 2 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., page 281, § 1121; Babbitt's Motor Vehicle Law, page 403 paragraph 591; Payne v. Prestridge, 16 La.App. 479, 133 So. 512.

The duties of the approaching vehicle and the one turning to the left are reciprocal, and each should have his vehicle under control. The fact that the motorist making the left turn stops his vehicle partly in the opposite traffic lane may not be the proximate cause of the accident. Had the truck driver in this case stopped his truck so as to block oncoming traffic on his left, he would have been negligent. But there was ample space left for Miss Shirley to pass between the truck and the east curb—a distance of ten or eleven feet. The proximate cause of the accident was not the fact that the truck driver stopped his truck two feet or so over the black line, but the proximate cause of the accident was the failure of Miss Shirley to keep a proper lookout and see what she should have seen and her failure to properly regulate the speed of her car and keep it under proper control. Catalano et ux. v. Pritchard, 19 La.App. 262, 140 So. 100.

For the reasons assigned, the judgment is affirmed.